## Hiscott & Robinson v. King

*Joseph G. Murray,* for plaintiff.
*Robert C. Lear,* for defendant.

MILLER, *J.,* November 30, 1992—This matter comes before us on plaintiff's motion for post-trial relief in response to our entry of a directed verdict for defendant following a jury trial before this court on June 5, 1992.

The case arose out of plaintiff law firm's attempts to recover compensation for legal services provided to defendant, a former client who prematurely terminated his contingent fee agreement with plaintiff and sought the advice of other counsel who subsequently settled the defendant's personal injury action.

The facts are as follows. As a result of injuries suffered in an automobile accident on September 21, 1987, defendant consulted attorney William H. Robinson of the law firm of Hiscott & Robinson, Stroudsburg, Monroe County, Pennsylvania, with regard to legal representation in possible litigation against one Evelyn Rinaman, the driver of the vehicle which had rear-ended defendant's car. Defendant subsequently decided to hire plaintiff and

executed a contingent fee agreement, dated December 18, 1987, which provided for a fee to plaintiff of either 33 1/3 percent of all sums recovered if the matter settled prior to pre-trial conference or 40 percent of all sums recovered if settled following the commencement of the pre-trial conference or of those sums recovered at trial.

Mr. Robinson worked on this file from September 1987 until discharged by defendant in September 1988. During that period of time, Mr. Robinson's records indicated that he prepared and filed a complaint, reviewed and mailed correspondence on defendant's behalf, reviewed medical bills, met with the defendant and his wife on a few occasions and had several telephone conferences with defendant or with regard to the litigation. By Mr. Robinson's own testimony at trial, a total of 8.27 hours were spent by him on defendant's case.

On September 21, 1988, pursuant to defendant's demand, plaintiff released the file to defendant. The record shows, however, that no bill for services rendered was presented by plaintiff to defendant either at the time of discharge or since. Defendant subsequently retained Dennis P. Ortwin, Esquire, of Cohen, Knafo, Feeley & Ortwein, P.C. of Easton, Pennsylvania, to represent him in his action against Mrs. Rinaman. Mr. Ortwein eventually obtained a settlement for defendant in the amount of $105,000. The testimony adduced at trial established that Mr. Ortwein, who also represented defendant on a contingent fee basis, recovered his fee out of that settlement.

On May 4, 1990, plaintiff filed suit against defendant to recover "a fair and equitable portion of the $35,000 total fee with interest from the date of the receipt of the settlement funds and the costs of this suit." According to paragraph 19 of the complaint, plaintiff alleged that it was entitled to "a fair and equitable fee based upon the relative value of services performed."

Attorney Michael A. Snover, an associate of Mr. Ortwein, prepared and filed an answer, new matter and counterclaim to the complaint in which defendant denied plaintiff's right to recover on the basis put forth in the complaint, set forth various and sundry defenses to plaintiff's claim and demanded judgment against plaintiff for damages resulting from plaintiff's failure to promptly settle the defendant's claim against Mrs. Rinaman. This counterclaim was eventually withdrawn voluntarily by the defendant prior to trial.

As indicated above, this matter was set for jury trial for June 5, 1992. Following the close of the evidence, this court directed a verdict for the defendant on the grounds that plaintiff, through attorney Robinson's own testimony, had admitted that he had represented defendant pursuant to a contingent fee agreement, entitling him to no fee in the event that he failed to obtain a recovery on defendant's claim against Mrs. Rinaman and that he had, in fact, recovered nothing for his client.

Plaintiff filed timely post-trial motions in the nature of a motion for a new trial. Argument was set for November 2, 1992. Although both parties filed briefs, only attorney Robert C. Lear, who had entered his appearance on behalf of defendant as co-counsel with Mr. Ortwin, appeared to argue. With this as background, we are now prepared to rule on the issues raised by plaintiff's motion.

In spite of the numerous grounds alleged in support of its motion for post-trial relief, the only issue briefed by plaintiff's counsel concerned our ruling which resulted in the entry of the directed verdict for defendant. Plaintiff asserts, in support of its instant motion, that it was legal error for this court to have concluded that, because Mr. Robinson had failed to obtain settlement, plaintiff, therefore, was not entitled to any compensation. Moreover, according to plaintiff's argument, there was no evidence

adduced at trial to establish that plaintiff had been dismissed for cause. Plaintiff was, therefore, according to this theory, entitled to fair and reasonable compensation, the amount of which constituted a factual issue for the jury. The court, according to plaintiff, therefore, committed error when it entered the directed verdict and prevented the jury from deciding that issue.

This court will be frank. This case has troubled us from the moment that it first crossed our desk. We take notice of the fact that various attempts have been made both by the defendant's counsel as well as by our colleague on the bench, President Judge James R. Marsh, to settle this matter either through direct negotiations between the parties themselves or by a form of alternative dispute resolution. All such attempts have proven fruitless. Throughout the entire progress of this action, plaintiff has never clearly indicated what amount of recovery would satisfy it, other than its initial demand by way of complaint for a portion of the fee obtained by Mr. Ortwein and his firm—a demand which we find to be outrageous in light of the evidence of defendant's clear termination of his contract with plaintiff which also terminated plaintiff's right to be paid on a percentage basis and the very little effort given by Mr. Robinson toward defendant's case.

As has been stated, plaintiff is now before us on post-trial motions challenging our entry of a directed verdict for defendant. The law is clear; before entering a directed verdict, a trial court must consider the facts in the light most favorable to the party against whom the motion for directed verdict is made, here, the plaintiff, and must accept as true all evidence which supports that party's contention and reject all adverse testimony. *Cooke v. Travelers Insurance Co.*, 350 Pa. Super. 467, 504 A.2d 939 (1986). A motion for directed verdict may only be granted where the facts are clear and there is no room

for doubt. *Id.* A trial court may not properly enter a directed verdict if there are factual issues to submit to the jury. *Austin v. Harnish,* 227 Pa. Super. 199, 323 A.2d 871 (1974).

In the case at bar, we find that there was substantial support in the record for our entry of a directed verdict in favor of the defendant on the issue presented. An examination of the pleadings filed in this case indicated that plaintiff was relying upon the contingent fee agreement executed by defendant in support of its claim for compensation. The agreement itself is attached to the complaint as Exhibit "A." The plaintiff's prayer for relief is couched in terms of a recovery of a "portion" of the fee paid to new counsel who obtained the settlement of the claim, reasonably leading one to conclude that plaintiff was still seeking a percentage of the amount recovered.

In addition, Mr. Robinson testified on cross-examination that he was requesting one-third of the contingent fee paid to Mr. Ortwein and had so notified the defendant.

Yet, earlier in his testimony, Mr. Robinson had defined the nature of his then client's obligations to pay legal fees in the claim against Mrs. Rinaman, as follows:

*Q.* "Mr. Robinson, did you tell Mr. King about his choices for the cost of your representation?"

*A.* "I told him he could either pay me on an hourly basis or contingent fee agreement. I told him very clearly the normal in this type of case was a contingent fee. I did explain the option of paying by the hour is available. I will say I have never taken a personal injury case on an hourly basis, that's when I am representing a plaintiff."

*Q.* "Did you say anything else to Mr. King?"

*A.* "I explained to him very clearly that we would be paid a percentage of the recovery, whether by settlement or by a jury verdict, and that if recovered nothing, he

would pay nothing except for those costs which he would have to advance by law, filing fees, paying of court reporters, which don't go to me, but the third parties. If we recovered, we would be paid on the basis of percentage. If we didn't recover, we would be paid nothing, irrespective of the hours we spent." (N.T. at 79, June 5, 1992.)

This was then followed by his admission during cross-examination that, at the time of the contingent fee agreement's termination, he had recovered nothing for defendant.

*Q.* "You obtained nothing at the time your services were terminated?"

*A.* "There was no settlement, that is correct."

*Q.* "You obtained no money for him at the time you terminated services?"

*A.* "Right." (N.T. at 95-96, June 5, 1992.)

The nature of the attorney-client relationship was further reinforced by defendant who was called as of cross-examination by the plaintiff. In clear and extensive testimony, defendant testified as to his dissatisfaction with plaintiff's legal representation and the reasons underlying his decision to seek alternative counsel, further elaborating upon this during the examination by his own counsel. Following defendant's testimony, it was clear that the contract for legal services providing for a contingent fee had been terminated at a time when, under its terms, there was nothing due and owing to plaintiff as compensation. For this reason, the court finds no error in our entry of the directed verdict, and we deny plaintiff's motion to set aside the directed verdict and grant a new trial.

However, we do find that there is post-trial relief of a nature which should be granted in this case. Penn-

sylvania Rule of Civil Procedure 227.1 provides in pertinent part as follows:

"Rule 227.1. *Post Trial Relief*—

"(a) After trial and upon the written motion for post-trial relief filed by any party, the court may:

"(1) order a new trial as to all or any of the issues; or

"(2) direct the entry of judgment in favor of any party; or

"(3) remove a nonsuit; or

"(4) affirm, modify or change the decision or decree nisi; or

"(5) enter any other appropriate order."

An examination of the issues framed in this case and the evidence presented persuades us that we must fashion an appropriate order pursuant to Pa.R.C.P. 227.1(a)(5) to resolve the issue of the nature and amount of compensation to be afforded to plaintiff outside of the scope and terms of the contingent fee agreement.

In paragraph 19 of the complaint, it was averred that: "Plaintiff is entitled to a fair and equitable fee based upon the relative value of services performed."

The case law is clear; a client may terminate his or her relationship with an attorney at any time, notwithstanding a contract for fees, but this action does not deprive the attorney of the right to recover on a quantum meruit basis for the services rendered. *Dorsett v. Hughes,* 353 Pa. Super. 129, 509 A.2d 369 (1986); *Sundheim v. Beaver County Building & Loan Association, et. al.,* 140 Pa. Super. 529, 14 A.2d 349 (1940).

In the case at bar, we find that, despite plaintiff's reliance on and attachment of the written contingent fee agreement to the complaint, defendants were also adequately put on notice, by paragraph 19 of the complaint, that quantum meruit was one of the bases of plaintiff's claim. See *Lampl v. Latkanich,* 210 Pa. Super. 83, 231 A.2d 890

(1967). This is further supported by the extensive testimony elicited from Mr. Robinson as to the nature of the services rendered and the time spent by his firm on this matter. The record clearly indicated that plaintiff spent 8.27 hours in pursuit of defendant's claim during a time at which their customary hourly charge for such services was $145 per hour. Furthermore, similar to the court in *Lampl v. Latkanich, supra,* we find insufficient evidence that plaintiff was dismissed for cause, particularly in light of defendant's admission that he never aired his complaints to Mr. Robinson, such as would serve to totally defeat plaintiff's claim for compensation.

In light of the above and employing the standards identified earlier in this opinion, we enter what we deem an appropriate order to resolve this outstanding issue with the hope that this embarrassing chapter of Monroe County Bar Association history is finally at an end.

### ORDER

And now, November 30, 1992, we enter a verdict for plaintiff in the amount of $1,199.15, calculated to represent the amount of fee owed to plaintiff by defendant for 8.27 hours of work at an hourly rate of $145 per hour.